Johnson, Chief Judge.
The defense, in this case, rests upon the ground, that as Ellis had not been appointed by the company, but by the general agent, at Cleveland, and, as his appointment had not been certified to the auditor- of state, and a certified copy of such certificate filed with the recorder of Hamilton county, as required by section 21 of the act of April 16, 1867 (S. & S. 218), his acts, as such agent, were unlawful, and his sureties are not bound.
The 20th section of said act provided that the company should appoint an agent in each county in this state in which the company has established an agency, on whom process of law can be served. “ And such agent or attorney shall file with the auditor of state a certified copy of the charter of said company, and also a certified copy of the vote or resolution 'of the trustees or directors of said company,” etc.
By section 21 it is provided that: “ It shall not be lawful for any agent to act for any conqpany referred to in the foregoing section, directly or indirectly, in taking risks, collecting premiums, or in any manner transacting the business of life insurance in this state, without procuring from the said auditor a certificate of authority stating that *394 the foregoing requirements have been complied with, and setting forth the name of the attorney of said company, a certified copy of which shall be filed in the office of the county recorder where the agency is to be established, and shall be the authority of such company and its agent to commence business in this state.”
To the defense, founded on this statutory requirement, the plaintiff interposes the following reasons why the same is not sufficient in law.
1. These defendants are estopped from denying the agency of their principal, Ellis, because it is recited in the bond, under their hands and seals, that he “has been appointed agent of said Manhattan Life Insurance Company.”
2. That by the statjite, the duty of complying with section 21 of the act, is a personal duty imposed upon Ellis, and that his sureties on his bond can not take advantage of his neglect to comply with this statutory regulation.
3. That the money having been collected and received by Ellis as such agent, the illegality of the transaction, if it be illegal, of which it is the fruit, does not affect the company’s right to recover on the bond.
In the view we take of this case it is only necessary to consider the second and third of the above points.
By the 23d section of the act, it is provided that: “ It is not lawful for any person to act in this state as agent or otherwise, of any foreign insurance company, until it has deposited with the auditor of state $100,000 in securities of the kind required of domestic companies, and shall have appointed in each county an agent or attorney in which the company has an agency, on whom process of law can be served,” etc.
By section 25 such company shall also file a statement, similar to that required of domestic companies, and it is also made unlawful for any agent or agents, to act for such company, without procuring from the auditor of state a certificate showing that these requirements have been complied with, which certificate shall contain the name of the attorney and shall be filed with the county recorder, etc. *395 An examination of the statement of the case will show that the company had complied with the requirements of this act, so far as to authorize it to transact business'in Hamilton county, by its agent Rollo.
The averment is, that it had furnished the auditor of state with such a statement as was required, and had appointed and certified to him, the attorney in Cuyahoga county, and the agent in Hamilton county, on whom, by law, process could be served, and had received the certificate of authority required by section 23, to authorize it to commence business in Hamilton county.
The only default is in not complying with sections 20 and 21, before recited, as to the authority of Ellis to act as such agent for said county.
By those sections the duty is imposed on “ such agent or attorney, and not on the company, of filing with the auditor of state a copy of his appointment and of the charter, and of procuring from that officer a certificate of authority, etc.
Section 21 makes it unlawful for any agent to act for any company without procuring such certificate.
Clearly these are personal duties imposed on the aigent.
Assuming the proper construction of this act to be that each additional agent of the company in any county where one has already been properly appointed and qualified to act, must also file a certificate of his appointment with the auditor of state, and also a copy of it -with the county recorder, his failure to do so can not invalidate the acts of the company through other lawfully appointed agents in the same county. Neither would the failure of an agent, duly appointed by the company, to comply with sections 20 and 21 render him incapable of binding his principal.
"Without such compliance, his contracts within the scope of his authority would bind the company, notwithstanding this want of authority under the statute.
By the 37th section a severe penalty is imposed on such an agent for violating the provisions of the act, and as section 21 makes it unlawful for him to transact business un *396 til the conditions precedent imposed on him are complied with, he is subject to these penalties.
The object sought is to make foreign insurance companies amenable to our laws for business transacted in this state, and to place them on the same footing as domestic companies, and to protect policy-holders and others dealing with the company. 24 Ohio St. 79. This is done by imposing penalties on persons who represent the company.
They are agents to bind the company if it has authority to do business in the state, and having such capacity it can require a bond of such agents for a faithful discharge of their duties.
Compliance with sections 20 and 21, by Ellis, was not a condition precedent to the right of the company to transact business in Hamilton county, for that had already been acquired through their agent, Rollo.
Por these reasons we are of opinion that the sureties of Ellis are liable on this bond, notwithstanding his failure to comply with the statute in question.
Washington Insurance Co. v. Colton, 26 Conn. 46, is an authority directly in point.
By the laws of Pennsylvania, foreign insurance companies were only permitted to transact business in that state upon certain conditions, which were not complied with in respect to the business of an agent who had received and failed to pay over money.
An action on his bond against his sureties was brought for moneys received by such agent, and thie defense there, as here, was that the business was illegal, and the agent was under no obligation to account.
The court held otherwise, saying : “In regard to the neglect of the agent to file a copy of his appointment in the office of the secretary of state, this, by the laws of Pennsylvania, appears to be the duty of the agent himself, and it is quite obvious that it would be unjust to suffer him, or the persons who have become bound for the faithful discharge of his duties, to take advantage of this neglect so as *397 to protect him. from all accountability for moneys received as such agent.”
In Anderson v. Moncrieff, 8 Desau. 125, it was held, that “ an agent employed to sell, and remit moneys, shall not refuse to account on the plea that the act which brought the money into his hands was in violation of law.” And the court will go far to give such construction to the acts of a principal as to prevent them being held to be illegal in such a case.
In Columbus Insurance Co. v. Walsh, 18 Mo. 237, it was held that the failure of the company to comply with the statute of Missouri, which made it unlawful to'transact business in the state without a license, does not make the contracts made by their agents void.
It was an action by the company to recover back from the assured money paid on a loss in ignorance of a subsequent insurance which avoided the policy.
In speaking of the statute requiring a license to do business in the state, the court says: “ These agencies are required to obtain a license, . . . and upon a neglect or failure, the statute makes them liable to a penalty of five hundred dollars; but it does not declare contracts made by them void.”
To the same effect is Clark v. M. & R. Garnishees, etc., 19 Mo. 53.
This statute of 1867 was before the Supreme Court, in Union Mutual Ins. Co. v. McMillen, 24 Ohio St. 67, where the construction then given to it is practically decisive of this case. It is said the object of the act is, not to make the business of life insurance unlawful, but to protect policy holders and others dealing with the company.
It is true that, in that case, the action was on a policy issued by a foreign company, which had failed to comply with this act, and the company sought to relieve itself from liability because the statute had not been complied -with; but the holding is, that the prohibition is against persons acting for companies that have not complied with the re *398 quirements, and the intention was to rely on the penalties imposed as sufficient to compel compliance.
Authorities are not wanting apparently opposed to this view, but on examination it is believed they will be found to rest on tbe wording or construction of the statutes under which the cases arise.
In Washington Co. Mut. Ins. Co. v. Dawes, 6 Gray, 376, under a statute of Massachusetts, which prohibits a foreign insurance company from doing business unless certain conditions are eoniplied with, it was held that a failure to comply barred an action on a premium note.
But whatever may be the decisions in other states, as to the effect of a lion-compliance with these statutory regulations, on the validity of the acts of agents of such companies, it is settled by the case in 24 Ohio St., that a failure by agents' to comply with them does not invalidate their acts.
To hold otherwise would enable agents to take advantage of their own wrong.
The receipt of moneys on policies would undoubtedly bind the company as between it and the policy holder, and if he is not accountable, we would have the anomaly of an agent authorized to bind his principal and yet be himself not bound.

Judgment reversed. •

Since this case was decided the Supreme Court has-recognized and affirmed the principle on which this case rests. In Fiegert v. The State of Ohio, not yet reported, it is held, that a county treasurer and his sureties are liable, on his bond, for taxes collected on the duplicate, although the tax was illegal.
Scott, J., did not sit in this case.